# EXHIBIT A

186-50

FILED

## IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

KRISTEN SYKES,          1310633

          Plaintiff,

vs.          1232800

2015 DEC -9 PM 4:24

HOWARD G. HOGAN

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY.          1310634

No. 190744-3

          Defendant.

## COMPLAINT

Plaintiff, Kristen Sykes ("Ms. Sykes"), by and through counsel, for her complaint against the Defendants, Massachusetts Mutual Life Insurance Company ("Mass Mutual"), would show to the Court in support of her complaint as follows:

IS
D
toAtH

1.     Plaintiff, Kristen Sykes, is a citizen and resident of Knox County, Tennessee.

2.     Defendant, Massachusetts Mutual Life Insurance Company, is a corporation registered in Tennessee and may be served with process through its registered agent, Corporate Creations Network, Inc., at 205 Powell Place, Brentwood, Tennessee 37207-7522.

3.     Jurisdiction and venue are proper in this Court in that Mass Mutual does business in Knox County, Tennessee.

## FACTUAL BACKGROUND

4.    Mass Mutual is a financial firm in the business of selling and managing investment accounts.

5.    Timothy Sykes ("Mr. Sykes") is Ms. Sykes' ex-husband and an identified tortfeasor in this matter.

6.    Mr. Sykes may not be sued at the present time because he has filed for bankruptcy and the federal bankruptcy code prohibits filing of this lawsuit against him at this time.

7.    Ms. Sykes asserts that Mr. Sykes will be named as a defendant if and when the law permits Ms. Sykes to add him as a party to this suit.

8.    From as early as 1994 to on or about November 9, 2015, when he filed for bankruptcy, Mr. Sykes was a licensed financial planner and broker for Mass Mutual and other financial services firms in East Tennessee.

9.    Upon information and belief, from approximately 1994 to 2001, Mr. Sykes acted as an employee, career agent, and/or under contract exclusively for Mass Mutual.

10.    After 2001, Mr. Sykes continued to sell Mass Mutual products through businesses owned by him or for which he worked.

11.    At all times material to this litigation, Mr. Sykes was the registered representative for Mass Mutual IRA Contract No. TRN44843668 ("Account").

12.    Upon information and belief, Mr. Sykes originated the Account as an agent and/or employee of Mass Mutual.

13.    Mr. Sykes and Ms. Sykes were married from June 28, 1997 to November 1, 2011.

2

14.     During the course of their marriage, Mr. Sykes opened the Account, deposited funds into it, managed it, and significantly increased its value to more than $300,000.00.

15.     On November 1, 2011, Mr. and Mrs. Sykes entered into a Marital Dissolution Agreement ("MDA").

16.     The MDA decreed that the Account was a marital asset.

17.     Pursuant to Paragraphs 6 and 8 of the MDA, Ms. Sykes was to retain no less than $137,186.00 of funds held within various investment accounts owned by Mr. Sykes.

18.     Upon information and belief, as of October 1, 2012, the only account of sufficient value to satisfy Mr. Sykes obligation to Ms. Sykes under Paragraph 8 of the MDA was the Account.

19.     In accordance with Paragraph 6(e) of the MDA, Ms. Sykes agreed to retain funds assigned to her under the MDA in the Account for no less than three (3) years after November 1, 2011.

20.     Paragraphs 9 and 10 of the MDA also required Mr. Sykes to pay at least $250,000.00 in cash to Ms. Sykes between November 1, 2011 and October 1, 2012.

21.     Mr. Sykes was unable to pay the entire amount of $250,000.00 as agreed to in the MDA, so Ms. Sykes and Mr. Sykes agreed, subsequent to the MDA, that Ms. Sykes would be granted a greater interest in the Account ("Account Agreement").

22.     The Account Agreement was memorialized in a Qualified Domestic Relations Order ("QDRO"), which was entered by the Knox County Chancery Court on October 1, 2012.

3

23.     Under the QDRO, attached hereto as <u>Exhibit 1</u>, Ms. Sykes was to be assigned $353,567.88 of Mr. Sykes vested account balance as of November 1, 2011.

24.     On October 2, 2012, the Clerk and Master for the Knox County Chancery Court certified that the QDRO was mailed by U.S. Mail to Mass Mutual.

25.     Upon information and belief, Mass Mutual received the QDRO.

26.     Upon information and belief, Mass Mutual did not take appropriate actions to address and abide by the QDRO, including, but not limited to, separating the funds between Mr. and Ms. Sykes in order to ensure that Mr. Sykes no longer had sole control of any funds or assets that belonged to Ms. Sykes under the MDA and QDRO.

27.     Upon information and belief, Mr. Sykes endured financial hardship in 2013.

28.     Upon information and belief, Mr. Sykes withdrew all funds from the Account without the permission or knowledge of Ms. Sykes in 2013.

29.     The balance of the Account on December 31, 2013 was $0.00.

30.     Upon information and belief, no money has been added to the Account since December 31, 2013.

31.     At all times material, Ms. Sykes never received any financial statement, communication, correspondence, or other communication from Mass Mutual regarding the Account.

32.     Because Ms. Sykes knew that, under the MDA, she was required to maintain her portion of funds outlined in the QDRO with Mass Mutual for three (3) years, she did not begin to consider the withdrawal of her funds from the Account until the spring of 2014.

4

33.    On or about June 11 of 2014, counsel for Ms. Sykes resubmitted the QDRO directly to Mass Mutual in order to secure authority for Ms. Sykes to inquire into the state of the Account.

34.    Mass Mutual did not substantively respond to Ms. Sykes' resubmission and denied her access to information regarding the Account.

35.    From April of 2014 until December 9, 2014, Ms. Sykes investigated the state of the Account without access to it and without sufficient cooperation from Mr. Sykes to determine the Account's status.

36.    On November 13, 2014, counsel for Ms. Sykes sent a letter, attached hereto as Exhibit 2, that requested information regarding the Account from Mr. Sykes.

37.    In response to the November 13, 2014 letter, Mr. Sykes agreed to meet with Ms. Sykes.

38.    On December 9, 2014, Mr. Sykes met with Ms. Sykes and for the first time notified Ms. Sykes that he had withdrawn all funds from the Account.

39.    Until December 9, 2014, Mr. Sykes made false representations to Ms. Sykes that the Account retained the full balance of all funds owed to Ms. Sykes under the MDA.

40.    At all times material, Mr. Sykes and/or Mass Mutual acted without the consent or knowledge of Ms. Sykes with respect to funds that were owned or belonged to her pursuant to the MDA and QDRO.

5

## COUNT I

### FRAUD AND FRAUDULENT CONCEALMENT BY MR. SYKES
### WHILE ACTING AS AN AGENT OF MASS MUTUAL

41.    Plaintiff hereby reasserts Paragraphs 1 through 40 of the Complaint as if set forth fully herein.

42.    Based upon representations made by Mr. Sykes as to the Account, Plaintiff entered into the MDA and submitted a QDRO with respect to the Account.

43.    In order to induce the Plaintiff to enter into the MDA, Mr. Sykes represented that he would give Ms. Sykes a portion of the Account.

44.    Pursuant to the MDA and QDRO, at least a portion of the Account belonged to Ms. Sykes.

45.    Ms. Sykes believed, from her reasonable interpretation of the MDA, that her funds would need to remain with Mass Mutual for three (3) years after November 1, 2011.

46.    Upon information and belief, Mr. Sykes, his agent(s), and/or accomplice(s) took affirmative action to prevent Ms. Sykes from receiving access to the Account and thwart the purpose of the QDRO.

47.    Mr. Sykes was in a position to prevent Ms. Sykes' access to the account because he was an agent of Mass Mutual and the registered representative for the Account.

48.    At all times material, Mr. Sykes concealed information from Ms. Sykes in order to maintain sole access to the account.

49.    Mr. Sykes knew that he and Mass Mutual were required to comply with the QDRO.

6

50.    Mr. Sykes did not comply with the QDRO.

51.    As a result of Mr. Sykes' fraud and fraudulent concealment, Ms. Sykes has been damaged in an amount not less than $360,000.00 in compensatory damages, including, but not limited to, loss of profit, loss of money, lost time, and the full value and use of the funds belonging to her in the account and requests punitive damages as stated herein.

## COUNT II

### CONVERSION BY MR. SYKES
### WHILE ACTING AS AN AGENT OF MASS MUTUAL

52.    Plaintiff hereby reasserts Paragraphs 1 through 51 of the Complaint as if set forth fully herein.

53.    By his involvement in the MDA, knowledge of the account, and signature in the MDA, Mr. Sykes was aware that a substantial portion of the account belonged to Ms. Sykes.

54.    With knowledge that a portion of the account belonged to Ms. Sykes, Mr. Sykes withdrew all funds from the account for his personal enjoyment and use without Ms. Sykes' knowledge or consent.

55.    As a result of Mr. Sykes' conversion, Ms. Sykes has been damaged in an amount not less than $360,000.00, including, but not limited to, loss of profit, loss of money, lost time, and the full value and use of the funds belonging to her in the account.

### COUNT III
### BREACH OF CONTRACT BY MR. SYKES
### WHILE ACTING AS AN AGENT FOR MASS MUTUAL

56.    Plaintiff hereby reasserts Paragraphs 1 through 55 of the Complaint as if set forth fully herein.

7

57.     Ms. Sykes and Mr. Sykes executed the MDA on November 1, 2011.

58.     Mr. Sykes materially breached his obligations under the MDA improperly and without justification when he withdrew funds that belonged to Ms. Sykes from the account.

59.     Ms. Sykes acted in good faith and performed to the extent possible prior to Mr. Sykes' breaches.

60.     As a result of Mr. Sykes' breach of contract, Ms. Sykes has been damaged in an amount not less than $360,000.00, including, but not limited to, loss of profit, loss of money, lost time, and the full value and use of the funds belonging to her in the account.

## COUNT IV
## BREACH OF FIDUCIARY DUTY BY MASS MUTUAL

61.     Plaintiff hereby reasserts Paragraphs 1 through 60 of the Complaint as if set forth fully herein.

62.     Pursuant to the QDRO, the existence of the account, and applicable law, Mass Mutual had a fiduciary duty to Ms. Sykes.

63.     Ms. Sykes had a reasonable belief to trust and have confidence in the integrity and fidelity of Mass Mutual in honoring the QDRO.

64.     By failing to follow the terms of the QDRO, or take other appropriate action with respect to the same, Mass Mutual breached its fiduciary duty to Ms. Sykes.

65.     In addition, Mass Mutual failed to take appropriate measures to ensure that Mr. Sykes did not have ongoing control over the account as Mass Mutual's agent.

66.     Mass Mutual allowed an agent, with a clear conflict of interest, to manage the account.

67. Mass Mutual's breach of its fiduciary duty has damaged Ms. Sykes in an amount not less than $360,000.00, including, but not limited to, loss of profit, loss of money, lost time, and the full value and use of the funds belonging to her in the account.

## COUNT V
## NEGLIGENCE BY MASS MUTUAL

68. Plaintiff hereby reasserts Paragraphs 1 through 67 of the Complaint as if set forth fully herein.

69. Mass Mutual owed a duty to Ms. Sykes to exercise ordinary and reasonable care in the acceptance and management of her funds and response to the QDRO.

70. By failing to take appropriate action to protect Ms. Sykes' interest in the account, Mass Mutual failed to act as a reasonably careful person would do under the circumstances of this case.

71. Mass Mutual was negligent in that it permitted Mr. Sykes to withdraw all funds, including those belonging to Ms. Sykes, from the account despite its duties to preserve said funds that belonged to Ms. Sykes under the MDA.

72. Mass Mutual was negligent in that owed a duty to Ms. Sykes pursuant to the QDRO to protect her financial interests in the Account because it allowed an agent of Mass Mutual, with adverse interest to Ms. Sykes, to manage the Account.

73. Mass Mutual's negligence has damaged Ms. Sykes in an amount not less than $360,000.00, including, but not limited to, loss of profit, loss of money, lost time, and the full value and use of the funds belonging to her in the account.

9

## COUNT V
## RESPONDEAT SUPERIOR OF MASS MUTUAL

74.    Plaintiff hereby reasserts Paragraphs 1 through 73 of the Complaint as if set forth fully herein.

75.    Upon information and belief, Mr. Sykes acted as an agent of Mass Mutual at all times material to this case.

76.    Because Mr. Sykes was at all times material an agent of Mass Mutual, Mass Mutual is responsible for the actions of Mr. Sykes with respect to the account and Ms. Sykes.

77.    As a result of Mr. Sykes' conversion, breach of contract, and fraud, Mass Mutual's responsibility and negligence regarding the same, Mass Mutual has damaged Ms. Sykes in an amount not less than $360,000.00, including, but not limited to, loss of profit, loss of money, lost time, and the full value and use of the funds belonging to her in the account.

## COUNT VIII
## PUNITIVE DAMAGES

78.    Ms. Sykes hereby reasserts ¶¶ 1-77 of the Complaint as if set forth fully herein.

79.    As specifically set forth in Count I, Mr. Sykes has fraudulently, intentionally, recklessly, and/or maliciously engaged in acts, omissions, and representations with the intent of harming Ms. Sykes, including the theft of money that belongs to her.

80.    Plaintiff avers that Mass Mutual is vicariously liable for the fraudulent, intentional, reckless, and malicious acts and omissions of its employee/agent, Mr. Sykes, who fraudulently concealed and committed fraud against Ms. Sykes.

10

81.    Based on Defendant's intentional, reckless, malicious, and fraudulent acts and omissions set forth in this Complaint, pursuant to *Hodges v. S.C. Toof*, 833 S.W.2d 896 (Tenn. 1992), Plaintiff is entitled to punitive damages in an amount not to exceed $1,200,000.00.

WHEREFORE, Plaintiff, Kristen Sykes, respectfully requests and prays for the following relief:

1.    That the Court find and award to Ms. Sykes against the Defendants compensatory damages in an amount not less than $360,000;

2.    That the Court find and award to Ms. Sykes against the Defendants punitive damages not less than $1,200,000.00;

3.    That the Court find and award to the Plaintiff against the Defendants, Ms. Sykes' attorney's fees and costs;

4.    That Ms. Sykes have such other, further and general relief to which she may show herself entitled to upon a hearing of this cause.

Respectfully submitted this the 9th day of December, 2015.

BERNSTEIN, STAIR & McADAMS LLP

By: _____

C. SCOTT TAYLOR (BPR # 021037)
NATHANIEL H. EVANS (BPR # 026292)

*Attorneys for Plaintiff Kristen Sykes*

BERNSTEIN, STAIR & MCADAMS LLP
116 Agnes Road
Knoxville, Tennessee 37919
Telephone: 865-546-8030

11

# EXHIBIT 1

## IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

KRISTEN SYKES,         )

        Plaintiff,        )

vs.                  )   No. ~~179684-1~~

TIMOTHY DUNCAN SYKES,  )

        Defendant.      )

*179084-1*

**ENTERED**

**OCT 01 2012**

**HOWARD G. HOGAN**

### QUALIFIED DOMESTIC RELATIONS ORDER

### MASS MUTUAL IRA CONTRACT #TRN44843668

     This cause came to be heard before the Honorable John F. Weaver, Chancellor of the Chancery Court for Knox County, Tennessee, pursuant to the Final Judgment of Absolute Divorce entered in this cause on November 1, 2011, which requires, through the Marital Dissolution Agreement approved by this Court by order of date and incorporated herein, the allocation to the Plaintiff – Alternate Payee of a portion of the Defendant-Participant's retirement plan, and that the entry of this Qualified Domestic Relations Order ("QDRO") is intended to effectuate the division of retirement benefits as set forth therein.

IT IS HEREBY ORDERED AS FOLLOWS:

1.   This Order creates and recognizes the existence of an Alternate Payee's right to receive a portion of the Participant's benefits payable under an employer-sponsored defined contribution plan, which is qualified under Section 401 of the Internal Revenue Code (the "Code") and the Employee Retirement Income Security Act of 1974 ("ERISA"). This Order is intended to constitute a Qualified Domestic Relations Order ("QDRO") under Section 414(p) of the Code and Section 206(d)(3) of ERISA.

2.   The name, address, birth date and social security number of the plan "Participant" are:

Timothy Duncan Sykes
8331 East Walker Springs Lane
Suite 301
Knoxville, TN 37923
Date of birth: 11/30/1968
Social Security No.: 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

1

3.    The name, address, birth date and social security number of the "Alternate Payee" are:

Kristen Sykes
7206 Sherwood Drive
Knoxville, TN 37919
Date of birth: 05/18/1972
Social Security No.: 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]

4.    The Name of the Plan to which this Order applies is the Mass Mutual IRA Contract #TRN44843668 (hereinafter referred to as "Plan"). The name and address for the "Plan Administrator" for the Plan is:

Mass Mutual Financial Group
Annuity Service Center
1295 State Street
Springfieldm MA 01111

5.    This Order relates to the provision of marital property rights to the Alternate Payee as a result of the Final Judgment of Absolute Divorce between Participant and Alternate Payee entered on November 1, 2011.

6.    Amount of Alternate Payee's Benefit:  This Order assigns to Alternate Payee, as the Alternate Payee's separate account, **$353,567.88** of Participant's vested account balance in the Plan as of Judgment Date.  If Participant has an outstanding loan from the Plan as of Judgment Date, the loan balance shall be included as a part of the Plan balance to be apportioned between Alternate Payee and Participant, but the Plan investments allocated to Alternate Payee's Plan account shall not include any part of the Participant's loan balance.

7.    Commencement Date and Form of Payment to Alternate Payee and Other Rights under the Plan:  The Alternate Payee shall be eligible to receive benefits under the Plan as soon as administratively feasible following the date on which the QDRO is determined to be qualified. Such benefits will be payable in the form of a [lump sum] as soon as possible following entry of this order.  Alternate Payee shall have the option to rollover all or part of the benefit to an IRA in Alternate Payee's name.  Prior to the distribution of the Alternate Payee's benefit, the Alternate Payee shall have the right, to the same extent as the Participant under the Plan, to direct the investment of the Alternate Payee's Plan account.  The Participant's death after the Judgment Date shall not affect the Alternate Payee's rights to the benefits specified in this Order.  The Alternate Payee shall have the right to designate a beneficiary under the terms of the Plan for any benefit payable under this Order in the event of Alternate Payee's death, or in the event of Alternate Payee's death without a valid beneficiary designation on file with the Plan administrator, any such benefit shall be paid under the Plan, applying the terms of the Plan as though the Alternate Payee was a Plan participant who died in service and fully vested in the Alternate Payee's Plan account.

2

8.    This Order is not intended, and shall not be construed in such a manner as to require the Plan:

    (a)    to provide any type or form of benefit option not otherwise provided under the terms of the Plan;

    (b)    to require the Plan to provide increased benefits determined on the basis of actuarial value; or

    (c)    to require the payment of any benefits to the Alternate Payee that are required to be paid to another alternate payee under another Order previously deemed to be a QDRO.

9.    Certification of Necessary Information:  All payments made pursuant to this Order shall be conditioned on the certification by the Alternate Payee and the Participant to the Plan Administrator of such information as the Plan Administrator may reasonably require from such parties to make the necessary calculation of the benefit amounts contained herein.

10.    Continued Qualified Status of Order:  It is the intention of the parties that this QDRO continue to qualify as a QDRO under Section 414(p) of the Code, as it may be amended from time to time, and that the Plan Administrator shall reserve the right to reconfirm the qualified status of the Order at the time benefits become payable hereunder.

11.    Tax Treatment of Distributions Made under This Order:  For purposes of Sections 402(a)(1) and 72 of the Internal Revenue Code, any Alternate Payee who is the spouse or former spouse of the Participant shall be treated as the distributee of any distribution or payments made to the Alternate Payee under the terms of this Order, and as such, will be required to pay the appropriate federal income taxes on such distribution.

12.    Constructive Receipt:  In the event that the Plan Trustee inadvertently pays to the Participant any benefits that are assigned to the Alternate Payee pursuant to the terms of this Order, the Participant shall immediately reimburse the Alternate Payee to the extent that he has received such benefit payments and shall forthwith pay such amount so received directly to the Alternate Payee within ten (10) days of receipt.

13.    Continued Jurisdiction:  The Court shall retain jurisdiction with respect to this Order to the extent required to maintain the original intent of the parties as stipulated herein.

3

14. Pursuant to Tennessee Code Annotated § 36-4-121 or other state statute, this Order is issued providing for the division of marital property rights between spouses and former spouses in actions for divorce.

ENTER this _1st_ day of _October_, 2012.

_____
Chancellor John F. Weaver

Agreed and approved for entry:

_____
Charles Swanson, BPR #006716
Attorney for Plaintiff
Sheppeard, Swanson & Mynatt, PLC
P.O. Box 2149
Knoxville, TN 37901
865.546.3653

ATTEST:
Certified a True Copy
Howard G Hogan
Clerk and Master Chancery Court
By _____
Deputy Clerk

_____
Wayne Decatur Wykoff, BPR #015916
Attorney for Defendant
Sexton & Wykoff, PLLC
P.O. Box 31167
Knoxville, Tennessee 37930
865.691.7900

CERTIFICATE

I, Howard G. Hogan hereby certify that I have mailed a true and accurate copy of the foregoing _QUADRO_ to all parties or their attorney of record who have not approved same, by placing same in the U.S. Mail, postage prepaid this 2nd day of _October_ 20 __

Clerk & Master Chancery Court
By _____
Deputy Clerk

4

# EXHIBIT 2

## SHEPPEARD & MYNATT, PLC
### ATTORNEYS AT LAW
#### 616 W. HILL AVENUE
#### KNOXVILLE, TENNESSEE 37902

SARAH Y. SHEPPEARD*
WILLIAM A. MYNATT, JR.*
WILLIAM M. BENNETT**

MAILING ADDRESS
POST OFFICE BOX 2149
KNOXVILLE, TENNESSEE 37901-2149

TELEPHONE (865) 546-3833
FACSIMILE (865) 637-7300

*SUPREME COURT RULE 31 MEDIATOR
**ALSO LICENSED IN FLORIDA

November 13, 2014

Wayne Wyckoff
Sexton and Wyckoff, PLLC
P.O. Box 31167
Knoxville, Tennessee  37930-1167

    Re:    Kristen Sykes v. Timothy Duncan Sykes
           Knox County Chancery Court No.  179684-1

Dear Wayne:

I do not know if you continue to represent Mr. Sykes but if you do not, I would appreciate you either letting me know or forwarding this directly to him.  Ms. Sykes has come in to see me about Mr. Sykes's failure to comply with the Marital Dissolution Agreement.  As you know, he is to pay her $15,000 per month until the marital residence sells and then $20,000 for the remainder of eighty-eight months from the date of the entry of the divorce.  This is property division and is not modifiable, nor can it be discharged in bankruptcy.

In December of 2013, he ceased making any payments to her at all.  He did assign a contract payment to her and she has received $10,000.00 per month since March 2013 and he made up the difference until December, 2013.  Beginning in January, 2014, she only received the $10,000.00. Because he actually owes her an additional $3,200.00 per month as child support and the Court will apply his payments to child support first, he has only paid her a total of $68,000 where he should have paid 150,000.  This is an alarming shortfall of $82,000.00 as of the end of October.  It is Ms. Sykes's understanding that the contract from which she is receiving funds will end in March of 2015.  My calculations indicate that Mr. Sykes's obligation will not end until February of 2019.  Ms. Sykes has asked me to request from you Mr. Sykes's plan to address this debt.

He told Ms. Sykes that he has a health insurance plan in place but has yet to provide the cards and I would request that that be done immediately.  He was to provide proof that he is maintaining life insurance on himself to cover the debt he owes to Ms. Sykes and I would like to see that proof immediately as well.

She has asked me to wait until November 24, 2014 to take any action in Court and I intend to wait, but she must have some explanation and plan provided within that time or I will be forced to ask the Court to reduce the current amount owed to judgment, to grant my fees, and begin execution.

Additionally, I have a copy of your letter transmitting the Mass Mutual QDRO in October of 2012.  I sent another certified copy to them in the early summer.  We are concerned that we have not had any response from them and they will not give Ms. Sykes any information directly.  I

have some concern that Mr. Sykes may have caused a very large problem regarding that account and would appreciate any help in relieving me of that notion.

Yours truly,

William A. Mynatt, Jr.

WAM/sre
cc:    Kristen Sykes

## IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

KRISTEN SYKES,

     Plaintiff,

vs.                                                              No. _____

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY.

     Defendant.

## COST BOND

     I, KRISTEN SYKES, as Principal, and Bernstein, Stair & McAdams LLP,
as Surety, are held and firmly bound unto the Clerk of the Knox County Circuit Court,
for the payment of all costs awarded against the principal. To that end we bind
ourselves our heirs, executors and administrators.

     The Principal is commencing legal proceeding in the Knox County Circuit
Court. If the Principal shall pay all costs which are adjudged against her, then this
obligation is void. If the Principal fails to pay, then the surety shall undertake to pay all
costs adjudged against the Principal. Mandated at T.C.A. § 20-12-120, et seq.

**PRINCIPAL**                                    **SURETY**

*Kristen Sykes, by NE*
*Nathaniel*
*Evans*
KRISTEN SYKES                                    BERNSTEIN, STAIR & MCADAMS LLP
7206 Sherwood Drive
Knoxville, Tennessee 37919                       By: *C Scott Tay, by NE*
Telephone: (865) 310-8242                        *Nathaniel*
                                                 *Evans*
                                                 C. SCOTT TAYLOR (BPR # 021037)
                                                 116 Agnes Road
                                                 Knoxville, Tennessee 37919
                                                 Telephone: 865-546-8030
                                                 Facsimile: 865-522-8879